IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN A. HEMSLEY, | ) | No. C 09-6002 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION |
| v. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| OFFICER LUNGER, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, a California prisoner proceeding *pro se*, filed a second amended civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Officer Lunger ("Defendant"). Defendant has filed a motion for summary judgment, arguing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Although given an opportunity, Plaintiff has not filed an opposition. Having carefully considered the papers submitted, Defendant's motion for summary judgment is GRANTED.

### BACKGROUND[1]

On May 25, 2008, Defendant, employed by the Hayward Police Department, was driving his police vehicle when he noticed Plaintiff's car driving at approximately 50 miles per hour in a residential neighborhood, which had a 25 mile per hour speed limit. (Decl. Lunger at ¶¶ 2-3.) R.

---

[1] The following facts are undisputed unless otherwise indicated.

Order Granting Defendant's Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Hemsley002msj.wpd

DeRespini was a passenger in Defendant's car at the time. (*Id.* at 2.) Suddenly, Defendant noticed Plaintiff's car rapidly decelerate and slowly pass Defendant's vehicle at around 10 miles per hour. (*Id.* at ¶ 4.) Defendant began to follow Plaintiff's car in an attempt to catch up with him. (*Id.*) Plaintiff's car moved erratically, and Defendant believed it might have collided with a parked car along the curbside. (*Id.*) Defendant then learned that the registration for Plaintiff's car was expired. (*Id.*) Plaintiff's car continued to swerve, and Defendant believed that Plaintiff was impaired or intoxicated. (*Id.*)

Defendant turned on his emergency lights in an attempt to stop Plaintiff's car and conduct a sobriety check. (*Id.* at ¶ 5.) In response, he heard Plaintiff's car muffler get louder, and observed Plaintiff's car accelerating. (*Id.* at ¶ 6.) Defendant turned off his police lights and continued to follow Plaintiff. (*Id.*) Defendant estimated that both cars were proceeding at approximately 40 miles per hour. (*Id.*) Defendant continued to observe Plaintiff driving in an erratic manner by both swerving and fluctuating his speed between 5 and 40 miles per hour. (*Id.* at ¶¶ 7-8.) Defendant requested additional patrolmen via the police department dispatcher. (*Id.* at ¶ 7.) Plaintiff's car then skidded to a stop at 7th Street, where he parked in a private driveway. Defendant believed Plaintiff was going to try to escape by foot. (*Id.* at ¶¶ 9-10.)

Defendant positioned his patrol car so that the left front bumper was in line with the middle of the driveway where Plaintiff's car stopped. (*Id.* at ¶ 10.) Defendant's car did not block the driveway. (*Id.*) Plaintiff quickly reversed out of the drive, passing in front of Defendant's car, and collided with a parked car alongside the curb. (*Id.*) Defendant put his own car in reverse, believing that Plaintiff was going to try to flee. (*Id.* at ¶ 11.)

Defendant asserts that Plaintiff accelerated toward his car and slammed into the front passenger side bumper, reversed, and ran into Defendant's vehicle again, close to where DeRespini was sitting. (*Id.* at ¶ 11.) Defendant believed that Plaintiff was willing to engage with a police officer rather than flee. (*Id.* at ¶ 12.) Plaintiff asserts that Defendant attempted to stop him by ramming the front of Plaintiff's car. (SAC at 3.) Because Defendant was in fear for his life and DeRespini's life, Defendant exited the car, drew his gun, and positioned himself at the rear of the police car. (Decl. Lunger at ¶ 12.)

Defendant yelled out, "Let's see your hands," but, due to the dim lighting, Defendant could not see inside Plaintiff's car. (*Id.*) As Defendant began to approach Plaintiff's car, he saw Plaintiff's car "lurch" forward and accelerate quickly. (*Id.* at ¶ 14.) Defendant believed that Plaintiff was going to try to run him over. (*Id.*) As a result, Defendant shot a "volley" of bullets into the front of Plaintiff's car. (*Id.* at ¶ 15.) Plaintiff's car stopped. (*Id.* at ¶ 16.) Defendant believed he had "neutralized the threat," and slowly moved toward the driver's side of Plaintiff's car. (*Id.*) Suddenly, Plaintiff's car accelerated again toward Defendant, and, believing that his life was in danger, Defendant fired his gun again as Plaintiff's car drove past him. (*Id.*) Defendant fired a total of nine shots. (*Id.* at ¶ 18; SAC at 3.) Plaintiff fled from the scene.

Subsequent investigation revealed that Plaintiff was a wanted parolee at the time of the incident. (Decl. Hom, Ex. D, Declaration in Support of Probable Cause Summary.) Five days later, on May 30, 2008, Plaintiff was found with an apparent gunshot wound to his right arm. (*Id.*) Plaintiff was arrested the same day for the parole violation warrant. (*Id.*) On May 31, 2008, Plaintiff was at Saint Rose Hospital (SAC at 3) and told Officer Obischere, "[T]ell that Officer I'm sorry for what happened. I didn't mean it. I did not mean to hurt him, but I was afraid. . . . I was afraid man. That's why I had to get away. I didn't mean it man. I promise." (Decl. Obischere at ¶ 3.) Officer Obischere understood Plaintiff to be referring to the May 25, 2008 encounter with Officer Lunger. (*Id.* at ¶ 4.)

**ANALYSIS**

I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

1  issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving
2  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
3  reasonable trier of fact could find other than for the moving party.  But on an issue for which the
4  opposing party will have the burden of proof at trial, as is the case here, the moving party need
5  only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*
6  at 325.

7  Once the moving party meets its initial burden, the nonmoving party must go beyond the
8  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
9  genuine issue for trial." Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over
10 material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
11 *Liberty Lobby, Inc.*, 477 U.S. at 248.  It is not the task of the Court to scour the record in search
12 of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The
13 nonmoving party has the burden of identifying, with reasonable particularity, the evidence that
14 precludes summary judgment. *Id.*  If the nonmoving party fails to make this showing, "the
15 moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

16 At the summary judgment stage, the Court must view the evidence in the light most
17 favorable to the nonmoving party: if evidence produced by the moving party conflicts with
18 evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
19 forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,
20 1158 (9th Cir. 1999).

21 II.     Legal Claims and Analysis

22 Plaintiff alleges that Defendant's act of firing nine shots at him was excessive force, in
23 violation of the Fourth Amendment.  Defendant argues that he is entitled to summary judgment
24 because, based on the undisputed facts, he did not violate Plaintiff's constitutional rights.  In the
25 alternative, Defendant contends he is entitled to qualified immunity.

26 Here, the excessive force claim arises in the context of an arrest or investigatory stop of a
27 free citizen, and so is most properly characterized as one invoking the protections of the Fourth
28 Amendment, which guarantees citizens the right "to be secure in their persons . . . against

unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Id.* at 395 n.10.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citations and internal quotation marks omitted). "We first assess the quantum of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). Factors that are considered in assessing the government interests at stake include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Further, where it is or should be apparent that an individual is emotionally or mentally unstable, that is a factor that must be considered in determining the reasonableness of the force employed. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003).

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. *See Forrester v. City of San Diego*, 25 F.3d 804, 806 n.2 (9th Cir. 1994) (use of minimal and controlled force in manner designed to limit injuries was reasonable); *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose least intrusive alternative would require them to exercise superhuman judgment).

A defendant is entitled to summary judgment on a claim of excessive force where there is no genuine issue for trial because the record taken as a whole would not lead a rational trier of

fact to find for the plaintiff. *See Henderson v. City of Simi Valley*, 305 F.3d 1052, 1061 (9th Cir. 2002) (summary judgment in favor of defendant proper where evidence in the record in support of plaintiff's excessive force claim was "woefully sparse"); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (plaintiff's statement that she "did not resist arrest in any way" is conclusory allegation that is insufficient to defeat defendant's motion for summary judgment).

Here, the undisputed facts demonstrate that, prior to Defendant firing shots at Plaintiff's car, he knew only that Plaintiff had been driving erratically, and was driving with an expired registration. Plaintiff attempted to evade Defendant's car, accelerating after Defendant turned on his police emergency lights, and then abruptly stopped in a private driveway. Plaintiff's car slammed into Defendant's car twice, and Defendant feared for the safety of his passenger. At some point, Defendant rammed his car into Plaintiff's in an effort to stop Plaintiff. Then, Defendant exited his vehicle, drew his weapon, and ordered Plaintiff to put his hands up. Rather than comply with Defendant's order, Plaintiff accelerated toward Defendant two separate times, making Defendant believe that Plaintiff was attempting to run him over in order to escape. In response to Plaintiff's actions, Defendant used deadly force, i.e., firing his gun nine times, in an attempt to prevent Plaintiff from injuring himself or others in his escape.

Under the totality of the circumstances, and viewing the evidence in the light most favorable to Plaintiff, the Defendant's use of force – shooting at Plaintiff's car nine times – was reasonable. Considering the various factors identified by *Graham*, for the reasons stated below, the Court concludes as a matter of law that the force used was not excessive.

A.  *Quantum of force used*

Aside from Defendant's firing his weapon at Plaintiff when he believed Plaintiff was going to run him over with the car, the only other time Defendant used force was when he utilized his own police vehicle to stop Plaintiff. Plaintiff submits no evidence as to how severely Defendant's car hit his, what effect the "ramming" had on Plaintiff's car, or the timing of when Defendant's car hit his in relation to any other interaction they had that night.

The Ninth Circuit has recognized that in some instances, a person has the "limited right

to offer reasonable resistance to an arrest that is the product of an officer's personal frolic. That right is . . . triggered . . . by the officer's bad faith or provocative conduct." *Blankenhorn v. City of Orange*, 483 F.3d 463, 479 (9th Cir. 2007) (quoting *United States v. Span*, 970 F.2 573, 580 (9th Cir. 1992)). According to Plaintiff, Defendant rammed his police vehicle into his car in an attempt to stop Plaintiff. Assuming that Defendant's action was taken in bad faith, Plaintiff had a limited right to offer reasonable resistance. Even viewing the facts in the light most favorable to Plaintiff, attempting to run over Defendant twice cannot be considered "reasonable resistance." *See, e.g.*, *Blankenhorn*, 483 F.3d at 480 (arrestee offered reasonable resistance when the officers assaulted him several times and there was no indication that the arrestee struck out at any of the officers or bystanders).

Nonetheless, Plaintiff's claim is that Defendant's firing of nine shots – not that Defendant's act of using his police car to stop Plaintiff – was excessive. The quantum of force was clearly deadly force. *See Blanford v. Sacramento County*, 406 F.3d 1110, 1115 n.9 (9th Cir. 2005). In light of the Declaration of Probable Cause (Decl. Hom, Ex. D), a reasonable inference can be drawn that when Plaintiff was found and arrested on May 30, 2008, his apparent gunshot wound resulted from Defendant's shooting at him. Nevertheless, the evidence is undisputed that Defendant attempted to temper the severity of the force by first, commanding Plaintiff to show his hands and then slowly approaching Plaintiff's car. The shooting did not occur until after, and in response to, Plaintiff's assaults. The undisputed evidence shows that Plaintiff drove his car directly at Defendant two times, resulting in Defendant believing that his life was in danger, as well as the lives of other officers if he was not able to stop Plaintiff. The law is clear that the use of deadly force is reasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

B.  *Severity of the crime*

At the beginning of the encounter, the severity of the crime was not particularly serious. Defendant initially observed Plaintiff driving with an expired registration, *see* Cal. Vehicle Code § 4601, and then, committing the misdemeanor of evading a police officer while in a motor

vehicle, *see* Cal. Penal Code § 2800.1.[2]

  C.  *Immediacy of threat to the safety of officers or others*

At the time Defendant fired his weapon, the undisputed facts show that Plaintiff posed an immediate threat to the safety of Defendant and his passenger. The Ninth Circuit has characterized the threat posed by a suspect as the "most important single element of the three [*Graham*] factors." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). Plaintiff had slammed his car into the passenger side of Defendant's car, where DeRespini was sitting, unarmed. After Defendant exited the car with his weapon drawn, and ordered Plaintiff to show his hands, Plaintiff appeared to ignore Defendant's direction, and instead, accelerated toward Defendant with Plaintiff's tires screeching. Defendant believed Plaintiff was going to run him over and began shooting at Plaintiff's car. Defendant slowly approached Plaintiff's car when it had stopped, and Plaintiff quickly accelerated toward Defendant. Defendant fired his weapon at Plaintiff's car again when it was approximately five feet from him. Defendant believed that if he did not stop Plaintiff, Plaintiff might injure him or another officer who would soon be in the area in response to Defendant's previous call for back-up.

  D.  *Active resistance to arrest or attempt to evade arrest by flight*

Plaintiff does not dispute Defendant's observation that he was attempting to evade the police.

The Court recognizes that leisurely second-guessing regarding potential alternatives that Defendant may have chosen ignores the directive to analyze the force making "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Under these undisputed facts, this Court concludes that no reasonable jury could find that Defendant applied an excessive amount of force against Plaintiff.

---

[2] Although Defendant points out that Plaintiff had an outstanding warrant (MSJ at 9), there is no indication that Defendant knew about it at the time of their encounter.

Order Granting Defendant's Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Hemsley002msj.wpd  8

1    In light of the above, Plaintiff has failed to establish a triable issue of fact as to whether
2 he was subjected to excessive force by Defendant.  Defendant is entitled to judgment as a matter
3 of law.
4 III.    Qualified Immunity
5    The defense of qualified immunity protects "government officials . . . from liability for
6 civil damages insofar as their conduct does not violate clearly established statutory or
7 constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,
8 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth
9 a two-pronged test to determine whether qualified immunity exists.  The threshold question is:
10 "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the
11 officer's conduct violated a constitutional right?"  *Id.* at 201.  If no constitutional right was
12 violated if the facts were as alleged, the inquiry ends and defendants prevail.  *See id.*  If,
13 however, "a violation could be made out on a favorable view of the parties' submissions, the
14 next, sequential step is to ask whether the right was clearly established. . . .'  The contours of the
15 right must be sufficiently clear that a reasonable official would understand that what he is doing
16 violates that right.' . . .  The relevant, dispositive inquiry in determining whether a right is clearly
17 established is whether it would be clear to a reasonable officer that his conduct was unlawful in
18 the situation he confronted."  *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640
19 (1987)).  Although *Saucier* required courts to address the questions in the particular sequence set
20 out above, courts now have the discretion to decide which prong to address first, in light of the
21 particular circumstances of each case.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).
22    As shown in the preceding section, the evidence in the record does not establish a
23 violation of Plaintiff's Fourth Amendment rights.  However, even assuming that there was a
24 violation, the evidence is undisputed that Defendant believed Plaintiff was going to run him over
25 with his car, and that if Defendant did not stop him, Plaintiff could injure another officer on his
26 way to assist.  "Police officers are entitled to employ reasonable methods to protect themselves
27 and others in potentially dangerous situations."  *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056
28 (9th Cir. 1995); *see Garner*, 471 U.S. at 3.  Officers need not avail themselves of the "least

intrusive means of responding to an exigent situation," but rather must act reasonably under the circumstances. *Id.* at 1056-57. Under these undisputed facts, it would not have been clear to a reasonable officer that it was unlawful to fire his weapon at Plaintiff's oncoming car, after Plaintiff attempted to evade Defendant and rammed into his police car twice, in order to subdue him and prevent injury to himself or others.

Defendant is entitled to judgment as a matter of law on the qualified immunity defense.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Defendant is entitled to judgment as a matter of law on the merits of the Fourth Amendment claim and on his defense of qualified immunity. Judgment will be entered in favor of Defendant and against Plaintiff. The Clerk shall close the file.

IT IS SO ORDERED.

DATED: 1/23/12

LUCY H. KOH
United States District Judge

Order Granting Defendant's Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.09\Hemsley002msj.wpd          10